By the Court—Robertson, J.
The defendants claim to have had a lien on the plaintiff’s marble, for a per diem compensation for allowing it to remain upon the cars by which it was brought, for several days in a public street. There was no evidence adduced of any right on their part-to such permanent occupation of the highway; the obstruction, -therefore, of it by such cars and marble was a public nuisance. So far as any safety of the merchandise was concerned, its bulk would probably have rendered it equally safe, if taken off from the cars and laid on the pavement. Leaving articles in an open vehicle exposed on a highway, is not the kind of storage for which a lien can be acquired. Even, the right of the defendants to make contracts for continuous storage of merchandise, although transported by them previously, under their charter, may be doubted. Upon any ground I think the claim for such lien is untenable.
The judgment must be reversed, and a new trial ordered, with costs to abide the event.
Monell, J.
The only question in this case is, whether the regulation of the defendants, to make an extra charge for the detention of their cars, known to, and, as I think the evidence establishes, acquiesced in and assented to, by the plaintiff, constituted a lien upon the marble, which would authorize the defendants in retaining it, until the charge was paid. I think the transaction, as testified to by Baker, constituted it in effect an implied,- if not an express contract, that the defendants would charge, and the plaintiff would pay, the extra charge. With notice of the regulation, he shipped the marble, and there is enough to raise an implied assumpsit, upon which, I have *80 no doubt, the defendants could recover in an action for that purpose.
A lien is defined to be the right which one person, in certain cases, possesses of detaining property placed in his possession, belonging to another, until some demand which the former has is satisfied. (Whitaker on Liens, p. 2.) They are of two kinds, particular or special, and general. A special lien is the right to retain the property of another, on account of labor bestowed or money expended on the same property, and is established by the common law and i>y express agreement. A general lien is the right to detain property for a general balance due from the owner, and arises by the usage of trade, the usage of the parties, or by express contract. (Ib.) The lien of a common carrier is a special, and not a general lien. Hence, in this case, if any lien exists in favor of the railroad company, which would authorize them to detain the- plaintiff’s marble until the charge for detaining the cars was paid, it must be established, either by express contract or by the common law. It is not pretended that there was any agree-. ment that the defendants should have alien on the marble until the extra charge was paid; and I have been unable to discover that it is sanctioned by the common law. The lien at common law exists only in respect of freight actually earned by the carrier of the goods, at the stipulated place of destination. (Angelí on Carriers, § 383.) “And therefore,” says this elementary writer, “ covenants .for demurrage, or for providing a full cargo, cannot be enforced by the specific remedy of lien, even though the charter-party contain such penal clause. The remedy for such matters rests entirely in covenant, and the mere penal clause will not extend the right of lien.”
The question arose in Birley v. Gladstone, 3 M. & Sel. R., 205. The ship was chartered for a voyage out and home, and by the terms of the charter-party, the merchant covenanted to pay for the homeward cargo, at certain rates per ton, on delivery at Liverpool; to load with full cargo, and to pay demurrage. He bound the goods to the *81 performance of his covenant. The Court of King’s Bench held, that the carrier could not detain the goods either for the freight of such as was put on board and afterwards reclaimed by compulsion, nor for the dead freight, nor for demurrage. Ld. Errehborough said that covenants for providing a full cargo, or for demurrage, give no lien. In this case it was claimed that the charter-party gave the lien for demurrage in express terms, as it was stipulated that the goods should be bound for the due performance of the covenants, but Le Brahc, J., says: “ it is impossible that this obligatory clause can be construed to mean that the owners of the ship would have a lien on the goods brought home for every breach of covenant in the charter-party ; as for instance, the not loading a full cargo and for demurrage. The remedy for such matters rests entirely in covenant.” It was not denied that such a lien might be created by express contract, but it was held that the words in the charter-party expressed no such agreement.
The only other case I have found bearing directly on this question is, Lambert v. Robinson, (1 Esp. R., 119,) which was trover for the conversion of goods. The goods had been taken up on the road. On their arrival at the inn, the plaintiff (owner) was there to receive them. The carriage came to three shillings six pence, which the plaintiff tendered. The tender was refused unless the further sum of two pence per parcel was paid for “ booking.” This was refused, as the goods had not been booked. The defendant then demanded the two pence as warehouse-room. This was also refused, as the goods had not been brought into the warehouse, but delivered from the wagon. Eyre, Ch. J., said: there was no lien given by law in this case; but if there was, the charges were not lawful, and a lien exists only for lawful charges.
The elementary books and cases to which I have referred would seem to settle the law that a lien exists for freight, only after it has been earned, unless there be an express contract creating the lien, in clear and unequivocal terms. The defendants in this case, claimed to detain the marble *82 until the plaintiff paid the'extra charge of one dollar per car. The freight had been tendered and paid. At most,.there was an implied agreement only, that the plaintiff ¡would pay- the extra charge. He did not, by an express stipulation-, bind the goods, or create a lien upon them,,until the ] charge was paid. Thé remedy, if any, rested entirely in the implied assumpsit; there was no right of lien, if or can the defendants' be regarded as warehouse keepers, and entitled to a lien for storage. They did not, in any sense, store the plaintiff’s marble. It was left npon the cars standing npon the railway track in the public highway. Upon its arrival at the place of destination and notice-to the plaintiff, and a - reasonable time given to accept and take, by the consignee, the defendants had discharged their whole duty, and could not be held responsible for any loss or damage; and hence no right of lien could arise for housing,' unless the defendants were warehouse men as well as carriers, which they were not in this case. '
Under the view of the law of lien which I have taken, it was error to refuse to charge as requested by the plaintiff."
The judgment must be reversed and a new trial granted, with costs to abide the event.